IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

RICHARD EVANS, derivatively on behalf of UNITED DEVELOPMENT FUNDING IV,

    Plaintiff,

-against-

HOLLIS M. GREENLAW, PHILIP K. MARSHALL, J. HEATH MALONE, STEVEN J. FINKLE, JOHN R. RAY, TODD ETTER, UMTH GENERAL SERVICES, L.P., and UMTH LAND DEVELOPMENT, L.P.,

    Defendants,

-and-

UNITED DEVELOPMENT FUNDING IV,

    Nominal Defendant.

Case No. 3:16-cv-635-M

**MEMORANDUM OPINION AND ORDER**
**GRANTING FINAL APPROVAL OF SETTLEMENT**

Before the Court is the parties' proposed derivative settlement. For the reasons stated below, final approval of the settlement is **GRANTED**.

**I.    BACKGROUND**

    **A.    Defendants and the allegations against them**

United Development Funding IV ("UDF IV") is a publicly-traded real estate investment trust (a "REIT") that issues loans for the acquisition and development of residential real estate. (ECF No. 53 at 2). UDF IV is organized under Maryland law, and has a principal place of business in Grapevine, Texas. Defendant UMTH General Services, L.P. serves as UDF IV's advisor and manages UDF IV on a day-to-day basis. Defendant UMTH Land Development, L.P. ("Land Development") is UDF IV's asset manager. UDF IV's affairs are overseen by a Board of Trustees (the "Board"). Defendant Hollis M. Greenlaw is Chairman of the Board and Chief

-1-

Executive Officer of UDF IV. Philip K. Marshall, J. Heath Malone, and Steven J. Finkle are independent trustees on the Board. John R. Ray previously served on the Board. Todd Etter is the Executive Vice President of Land Development, and Chairman, of UMT Services, Inc., as well as the general partner of UMTH General Services, L.P. and UMTH Land Development, L.P.

On February 22, 2016, Richard Evans—a shareholder of UDF IV—sent a letter to the Board, accusing the Board of operating UDF IV like a Ponzi scheme and engaging in self-interested transactions. (ECF No. 57 at 3 ¶ 9; ECF No. 57-1). The letter demanded that the Board establish an independent committee of investigators to assess allegations that UDF IV operated as a Ponzi scheme; take corrective actions against any individuals responsible for such wrongdoing; and implement adequate internal controls and systems to prevent a recurrence of similar events in the future. (*See* ECF No. 77-1; *see also* ECF No. 34-2). The Board did not immediately respond to the letter.

On March 4, 2016, Evans filed this derivative lawsuit against UMTH General Services, L.P., UMTH Land Development, L.P., Greenlaw, Marshall, Malone, Finkle, Ray, Etter, and nominal defendant UDF IV (collectively "Defendants"). (ECF No. 1). Evans alleged that the Board members repeatedly used their corporate powers to authorize interested party transactions with other entities that UDF IV's executives controlled. (*See, e.g., id.* at 2–3 ¶¶ 2–4; *id.* at 12–17 ¶¶ 38–51). Evans further alleged that UDF IV's officers and directors used UDF IV's real estate investment business to perpetuate a "massive Ponzi scheme" to pay the debts of related entities, thereby generating losses to UDF IV of tens of millions of dollars. (*Id.* at 2 ¶ 2). Evans asserted claims against Defendants for breach of fiduciary duty, unjust enrichment, and aiding and abetting liability.

### B.     Procedural history

On May 17, 2016, the parties jointly moved to stay this proceeding pending the resolution of related securities fraud litigation, *In re UDF IV Securities Litigation*, No. 3:15-cv-4030-M, and *Hay v. United Development Funding IV, et al.*, No. 4:16-cv-00188-M.  (ECF No. 46).  The Court granted the motion and stayed the case.  (ECF No. 47).

On July 12, 2016, Evans served a settlement demand on Defendants.  (ECF No. 53 at 6). On November 9, 2016, Evans and Defendants attended an in-person mediation in Fort Worth. (*Id.*).  Evans was joined at the mediation by plaintiffs from other UDF IV derivative state court actions: (i) *Floreale v. Greenlaw, et al.*, No. 058-286599-1; (ii) *Knoll v. Greenlaw, et al.*, No. 342-284220-16; and (iii) *Frey v. Greenlaw, et al.*, No. 096-287723-16.  Evans was also joined at the mediation by the parties from *In re UDF IV Securities Litigation*, Case No. 3:15-cv-4030-M, and *Hay v. United Development Funding IV, et al.*, No. 4:16-cv-00188-M.  The mediation was unsuccessful, but Evans continued to negotiate.

Several months after the mediation, Defendants produced 170,000 pages of documents related to UDF IV's operations.  (ECF No. 53 at 7).  On August 22, 2017, Evans's counsel interviewed Timothy McCormick, independent counsel for UDF IV's Audit Committee.  (*Id.*). During the interview, McCormick stated that the Audit Committee had investigated claims that UDF IV operated as a Ponzi scheme. (*Id.*; *see also* ECF No. 57-1).  McCormick discussed the chronology of the Audit Committee's investigation and gave a summary of conclusions reached by the Audit Committee, provided a detailed explanation of how UDF IV operated with respect to its affiliates, advisors, and managers, and stated UDF IV's responses to the public's accusations of fraud.  (ECF No. 53 at 7).

Several months later, Evans and Defendants agreed in principle to settle this case. (ECF No. 53 at 8). On December 21, 2017, the parties filed their Stipulation of Settlement with this Court.

**C.     The settlement**

In exchange for a release of derivative claims against Defendants and related persons, the proposed settlement would provide the following to UDF IV:

- $1.5 million, received from UDF IV's D&O insurance carrier, will be paid into an escrow account to be used by UDF IV. Up to $175,000 will be used by UDF IV to implement new corporate governance measures. Up to $650,000 will be used to compensate Evans's counsel for attorney's fees and expenses. The balance will be used to partially fund UDF IV's settlement of claims in *Hay v. United Development Funding IV, et al.*, No. 4:16-cv-188-M, and *In re United Development Funding IV Securities Litigation*, No. 3:15-cv-4030-M. (ECF No. 53 at 10 ¶ 1.1).

- UDF IV will add an additional independent trustee to UDF IV's Board, who is an "audit committee financial expert," with at least three years of relevant real estate experience at a public company, and who will serve as Chairman of UDF IV's Audit Committee. (*Id.* at 11 ¶ 1.2(A)).

- UDF IV will appoint a qualified person, with at least three years of relevant experience at a public company, to serve in the capacity of Chief Compliance Officer ("CCO") and be responsible for developing a comprehensive legal compliance and ethics program for UDF IV. (*Id.* at 11–12 ¶ 1.2(B)).

- UDF IV will implement revisions to its related party transaction policy. (*Id.* at 12 ¶ 1.2(C); *see also* Ex. A, attached to ECF No. 53).

- UDF IV's Audit Committee will be obligated to review and consider certain designated materials when deciding whether to approve transactions with Significant Borrowers (defined as "borrowers that have aggregate borrowings across their affiliated companies in excess of 15% of UDF IV's aggregate loan portfolio as reported in the prior financial quarter"), and these materials must describe the proposed transaction, the proposed loan or investment request, proposed collateral, a project overview, engineering due diligence, and an exit strategy analysis. (ECF No. 53 at 12 ¶ 1.2(D)).

- UDF IV will ensure the accuracy of its accounting policy disclosures by, among other things, requiring senior internal accounting staff to work in concert with UDF IV's independent auditor when describing UDF IV's accounting policies in its annual reports. (*Id.* at 13 ¶ 1.2(E)).

- UDF IV's Board (and each subcommittee) must meet at least four times per year and maintain proper minutes accurately reflecting the Board's discussions and resolutions. (*Id.* at 13 ¶ 1.2(F)).

- Each trustee must annually attend at least six hours of director continuing education programs, conferences, or similar presentations as shall be approved by the Nominating and Governance Committee of the Board. (*Id.* at 13 ¶ 1.2(G)).

- UDF IV will enhance its current "whistleblower" policy and update UDF IV's employee handbook to reflect the enhanced policy. (*Id.* at 13 ¶ 1.2(H)).

- UDF IV will implement and keep these agreed governance changes in effect for a period of three years following this Court's final approval of the terms of the settlement. (*Id.* at 13 ¶ 1.2(I)).

On December 21, 2017, Evans filed a motion for preliminary approval of the settlement. (ECF No. 54). On January 13, 2018, the Court granted the motion and approved a long-form notice of the settlement to be filed with the SEC (along with an SEC Form 8-K) and a short-form notice to be published in *Investor's Business Daily*. (ECF No. 55).

On January 22, 2018, Michael K. Wilson, the President of UMT Holdings, L.P., caused a Form 8-K to be filed on behalf of UDF IV with the SEC. (ECF No. 62 at 2 ¶ 3). The Form 8-K attached copies of the Stipulation of Settlement and the long-form notice. (*Id.*). Wilson also published the Stipulation of Settlement and the long-form notice on two websites, http://www.udfonline.com and http://udfiv.com. (*Id.*). Wilson caused the short-form notice to be published in the January 22, 2018 edition of *Investor's Business Daily*. (*Id.* at 2 ¶ 4).

On March 12, 2018, Evans moved for final approval of the settlement, an award of attorney's fees and expenses, and an incentive award. (ECF No. 56). Five supporting declarations were filed in support of Evans's motion. (*See* ECF Nos. 57–60, 62).

On April 16, 2018, the Court held a hearing to determine whether to approve the settlement. No parties filed objections or otherwise opposed the substantive terms of the settlement. (*See* ECF No. 57 at 7 ¶ 19). On April 30, 2018, one shareholder informed the Court that it did not object to the settlement. (ECF No. 67).

## III. FINAL APPROVAL OF THE SETTLEMENT

### A. Fairness, reasonableness, and adequacy of the proposed settlement

A settlement in a derivative action should be fair, reasonable, adequate, and in the best interest of the corporation. *Maher v. Zapata Corp.*, 714 F.2d 436, 454 (5th Cir. 1983). To determine whether a settlement is fair, reasonable, and adequate, courts analyze six factors: (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of proceedings and the amount of discovery completed; (4) the factual and legal obstacles to plaintiff prevailing on the merits; (5) the opinions of the plaintiff, plaintiff's counsel, and absent shareholders; and (6) the range of possible recovery and the certainty of damages. *See Sved v. Chadwick*, 783 F. Supp. 2d 851, 860 (N.D. Tex. 2009) (citing *Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004)). Settlements of shareholder derivative actions are particularly favored and should not be lightly rejected. *Maher*, 714 F.2d at 455.

#### 1. Fraud or collusion

In the absence of contrary evidence, the Court presumes there was no fraud or collusion behind the settlement. *See Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. Apr. 9, 2010), *as modified* (June 14, 2010). Here, there is no evidence of fraud or collusion. The parties negotiated their settlement for nearly two years, and only after conferring with representatives of multiple UDF IV shareholders and a third-party corporate governance expert. (*See* ECF No. 53 at 6–8; ECF No. 57 at 2 ¶¶ 5, 6; ECF No. 59 at 4 ¶¶ 13, 14). These facts support a finding that the settlement is fair, reasonable, and adequate.

#### 2. Complexity, expense, and likely duration of the litigation

Shareholder derivative actions are considered "notoriously difficult and unpredictable." *Maher*, 714 F.2d at 454. The Complaint in this case raises complex factual and legal issues,

including allegations against multiple defendants for orchestrating a Ponzi scheme through an intricate web of financial transactions. Litigation of these fact intensive claims would be difficult and time consuming. *See Sved*, 783 F. Supp. 2d at 861 (finding that derivative action was complex when shareholder asserted claims against numerous defendants for breaches of fiduciary duty and insider selling); *see also Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *18 (N.D. Tex. Nov. 8, 2005) (finding that class action was complex due to claims of securities fraud). Indeed, before this case was stayed, Defendants filed multiple dispositive motions in what appeared to be the start of a lengthy and hard-fought litigation. If litigation were to proceed, this case would likely continue to be hotly contested. This factor weighs in favor of final approval.

### 3. Stage of the proceedings

Litigation is still at an early stage, as this case was stayed in its third month of existence. (*See* ECF No. 47). Although there has not been any formal discovery, Defendants produced over 170,000 pages of corporate documents and made independent counsel for UDF IV's Audit Committee available for an external interview. (ECF No. 53 at 7). This amount of informal discovery suggests that Evans had sufficient information to gauge the strength and weaknesses of his claims and the probability of his success on the merits. *See Hall v. ProSource Techs., LLC*, No. 14-CV-2502 (SIL), 2016 WL 1555128, at *7 (E.D.N.Y. Apr. 11, 2016) (approving settlement when discovery included thousands of pages of documents); *In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *11 (E.D. Pa. Jan. 25, 2016) (same); *Sved*, 783 F. Supp. 2d at 862 (formal discovery is not required). Accordingly, this factor supports final approval of the settlement, although this factor receives less weight than others. *See In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).

4. Factual and legal obstacles to plaintiff prevailing on the merits

Derivative claims are unpredictable and difficult to prove. *See Maher*, 714 F.2d at 455. The business judgment rule would be a difficult obstacle for Evans to overcome in this case. Under Maryland's business judgment rule, it is presumed that corporate directors act in good faith and in the best interest of the corporation. Md. Code, Corps. & Ass'ns § 2–405.1(a). To overcome this presumption, the derivative plaintiff must establish that the directors did not act in good faith, in a manner reasonably believed to be in the corporation's best interests, or with the care that an ordinarily prudent person would use under similar circumstances. *See Hohenstein v. Behringer Harvard Reit I, Inc.*, No. 3:12-CV-3772-G, 2014 WL 1265949, at *5 (N.D. Tex. Mar. 27, 2014). Although Evans believes the facts of this case justify overriding of the presumption of the business judgment rule, it is uncertain whether he could overcome the presumption.

Defendants also raised substantial challenges to Evans's claims on the merits. (*See* ECF No. 29; ECF No. 31; ECF No. 34). Defendants have agreed to withdraw these challenges only because of the pending settlement.

Even if Evans surmounted Defendants' initial challenges, he would need to pursue significant discovery to support his complex claims of financial mismanagement and Board malfeasance. Designation of experts and expert discovery would be necessary. Defendants indicated that summary judgment motions would be forthcoming, and the prospects for success at trial are inherently uncertain. If Evans were to prevail at trial, he would likely face post-trial motions and an appeal.

Settlement provides a simpler, immediate, less expensive, and guaranteed resolution. This factor weighs in favor of final approval.

5. Opinions of the derivative plaintiff, counsel, and absent shareholders

At the hearing, all represented parties agreed that the settlement should be approved. There have been no objections to the settlement. The lack of opposition supports a finding that the settlement is fair, reasonable, and adequate. *See, e.g., Slipchenko v. Brunel Energy, Inc.*, No. CIV.A. H-11-1465, 2015 WL 338358, at *12 (S.D. Tex. Jan. 23, 2015); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1069 (S.D. Tex. 2012).

6. Range of possible recovery and certainty of damages

To evaluate the range of potential recovery, the court is to analyze the potential recovery to the corporation—not to the shareholders individually. *See Sved*, 783 F. Supp. 2d at 863–64 (citing *Torch Liquidating Tr. ex rel. Bridge Assocs. L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009)). In a derivative action, a reasonable settlement does not necessarily need to provide direct monetary relief to the corporation:

> [When] the derivative suit is largely an attack on past corporate management practices, as well as on some present officers and directors, the dollar amount of a possible judgment, which is essentially the sole goal in the class action damage suit, is not the sole, and may well not be the most important, matter to be considered, for the effects of the suit on the functioning of the corporation may have a substantially greater economic impact on it, both long- and short-term, than the dollar amount of any likely judgment in its favor in the particular action. . . . The evaluation of such an economic impact is necessarily judgmental and imprecise and normally does not lend itself to meaningful quantification.

*Maher*, 714 F.2d at 461.

Here, Evans's Complaint alleges that UDF IV suffered financial injuries totaling millions of dollars. The pre-suit letter that Evans served on UDF IV included a demand for an investigation of the Board, corrective action, and the implementation of policies to prevent a recurrence of similar wrongdoing. (*See* ECF No. 57-1).

Rather than undertake years of costly litigation, Evans negotiated a settlement that obtained meaningful monetary and non-monetary relief for UDF IV. Under the settlement, UDF

IV will receive the benefits of $1,500,000. (ECF No. 53 at 10 ¶ 1.1). Approximately $175,000 of these funds will be used to implement reforms to UDF IV's corporate governance policies. (*See id.* at 11 ¶ 1.2(A)–(I)). These funds are intended to promote the future wellbeing of UDF IV and to prevent the type of behavior that Evans contends gave rise to his claims in this case. (*See* ECF No. 59 at 3–10 ¶¶ 12–36; *see also Baxter v. United Dev. Funding IV*, ECF No. 13-4 (recommending similar amendments to UDF IV's corporate governance)).[1] The remaining balance of the settlement fund will be used for attorney's fees in this case and towards resolution of two securities fraud actions pending against UDF IV. (*See Hay v. United Development Funding IV, et al.*, No. 4:16-cv-188-M, and *In re United Development Funding IV Securities Litigation*, No. 3:15-cv-4030-M). These securities fraud actions threaten to cause further damage to UDF IV's reputation and pose a risk of additional financial exposure. To the extent the settlement in this case allows UDF IV to end these lawsuits and limit its exposure, the settlement provides an unmistakable benefit to UDF IV.

Based on the Court's consideration of the available facts and the relief to be provided under the proposed settlement, the Court finds that the settlement is fair, reasonable, adequate, and in the best interest of UDF IV.

**B.     Attorney's fees**

Evans applies for attorney's fees in the amount of $650,000, to be paid from the settlement fund. Counsel for UDF IV shareholders Adam Baxter and David Ostlund challenge Evans's fee request on the limited grounds that it does not compensate them for their individual contributions towards the settlement.

Because this derivate action is a diversity case, the determination of the fee award is governed by state law. *See Schilling v. Belcher*, 582 F.2d 995, 1003 (5th Cir. 1978). In

---

[1] UDF IV's Audit Committee already performed the type of internal investigation that Evans requested in his initial letter to the Board. (*See* ECF No. 53 at 7).

Maryland—where UDF IV was organized—attorney's fees may be recovered in a successful derivative action under the "common fund" doctrine. *See Boland v. Boland*, 31 A.3d 529, 542 (Md. 2011) (citing *Hess Const. Co. v. Bd. of Educ. of Prince George's Cty.*, 669 A.2d 1352, 1358 (Md. 1996)). Attorney's fees awarded under the common fund doctrine may be calculated using a percentage method, the lodestar method, or a combination of both. *Garcia v. Foulger Pratt Dev., Inc.*, 845 A.2d 16, 34 (Md. Ct. Spec. App. 2003).

The Court lacks sufficient information to evaluate Evans's request for attorney's fees under the applicable law. Evans did not submit any documents identifying the hours that his attorneys spent on individual tasks, nor did his briefing analyze each of the factors to be considered under the applicable law for assessing an award of attorney's fees. The Court is further concerned about the interplay between Evans's fee request and UDF IV's forthcoming settlement of *Hay v. Greenlaw, et al.*, No. 4:16-cv-00188-M, and *In re United Development Funding IV Securities Litigation*, No. 3:15-cv-04030-M. The settlements in those actions are expected to be paid, in part, from the same settlement fund that Evans seeks to withdraw for the payment of his fees in this case. (*See* ECF No. 53 at 10 ¶ 1.1). The Court therefore defers its determination of Evans's fee request until the two securities fraud actions are resolved. Evans may file a supplemental brief and additional evidence supporting his fee request for an amount not to exceed $650,000, whether the parties here agreed that such sum includes any fees that are attributable to work performed by Baxter and Ostlund's attorneys.[2] If the Court approves the securities fraud settlement and awards fees, it will simultaneously award fees for the attorneys in this derivative suit.

---

[2] Counsel for UDF IV shareholders Adam Baxter and David Ostlund may make a separate fee request in connection with the resolution of the two pending securities fraud actions, if they do not reach agreement with Evans' counsel.

### C. Incentive Award

Evans requests an incentive award of $2,500 for his twenty hours of work in this case. (ECF No. 56 at 20; ECF No. 60 at 2 ¶ 7). Because the Court is satisfied with Evans's contributions to the resolution of this case, the Court finds that Evans's request should be granted. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013); *Purdie v. Ace Cash Express, Inc.*, No. CIV.A. 301CV1754L, 2003 WL 22976611, at *7 (N.D. Tex. Dec. 11, 2003).

### IV. CONCLUSION

After evaluating the proposed derivative settlement, the Court finds that the settlement is fair, reasonable, adequate, and in the best interest of UDF IV. The Court therefore **GRANTS** final approval of the terms of the settlement. Within sixty days of this Order, UDF IV shall cause $1,500,000 to be deposited in an escrow account for further disposition by the Court. No more than $650,000 of that amount will be awarded for attorney's fees and expenses, and no more than $175,000 of that amount will be allocated to corporate governance reforms.

**SO ORDERED**.

May 14, 2018.

_____
BARBARA M. G. LYNN
CHIEF JUDGE